280 A.2d 88.

DOROTHY M. BOUDREAU *vs.* WILLIAM R. HOLZER *et al.*

AUGUST 6, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   In this civil action the plaintiff asks that her warranty deed conveying to the defendants a fee simple interest in a parcel of real estate be declared a mortgage. The case was tried to a justice of the Superior Court sitting without a jury, and, after he found for the plaintiff, the defendants appealed.

Following arguments in this case and preparatory to rendering our decision, we examined the record and then for the first time learned that no judgment had been entered, and that defendants had taken their appeal from the trial justice's decision rather than from a written order or judgment as required by Super. R. Civ. P. 73.   The case, therefore, was not properly here inasmuch as an appeal lies only from a judgment that is set forth in a separate document. *East Providence Credit Union* v. *Brown,* 104 R. I. 92, 242 A.2d 428.   To avoid the delay which would have resulted had we rejected the appeal for noncompliance with the

jurisdictional requirement, we adopted the practice followed in *Metts* v. *B. B. Realty Co.*, 108 R. I. 55, 56, 271 A.2d 811, 812 and *sua sponte* remanded the papers to the Superior Court for the entry of a *nunc pro tunc* judgment incorporating the trial justice's written decision. That judgment having been duly entered and the papers having been returned to this court, the case is now in order for disposition.

On the view we take of the case an extensive review of the evidence is unnecessary. Suffice it to say that in February, 1970 plaintiff was in financial difficulties. Her then current obligations exceeded $2,000, and in addition she owed $851.51 for past due taxes on the home which she owned and where she resided with her children. Located in the Town of Coventry, that home, apparently her only substantial asset, had an appraised value of $13,900, and was subject to a mortgage of record to The Connecticut Bank and Trust Company, on which the balance then due was about $5,800.

When defendants, her long-time neighbors and friends, learned of plaintiff's difficulties, they offered to assist with a loan. After some preliminary discussions it was agreed that they would lend her $2,000, and on February 26, 1970 she gave them her promissory note in that amount. It provided for repayment of the amount borrowed "At A Monthly Rate Of $20.00 Per Mo. at 8% Int. Per Year. Starting March 26, 1970 And Balance Is To Be Paid Monthly At Rate Above Or On Demand."

In conflict is what amount of money was actually advanced by defendants and, whatever that amount may have been, whether or not plaintiff received it on February 26, when she executed and delivered the note. The defendants testified that the note and the sum of $2,000 changed hands on the 26th. The plaintiff offered a different version. Her testimony was that she received nothing until the following

day. Then, she was given a check for approximately $1,-090.00 which she retained, and a second check for $851.51 which she endorsed so that it could be used to pay the overdue taxes on her home. The remainder of the $2,000 loan was retained by defendants and paid by them to The Connecticut Bank and Trust Company on account of the mortgage on plaintiff's residence.

In dispute, also, are the circumstances attendant upon plaintiff's conveyance of her real estate to defendants. While the parties agree that a warranty deed conveying a fee simple interest was delivered on February 27, 1970, the testimony as to what interest was intended to pass by that transfer is conflicting. The defendants, at trial, attempted to prove that the conveyance to them was in no way related to and was separate and distinct from the note transaction, and that the consideration for that transfer was their payment of the $851.51 for overdue property taxes and their assumption of the mortgage balance of about $5,800. Parenthetically, it should be observed, that following the delivery of the deed defendants and the mortgagee-bank entered into an agreement modifying the interest and the payment terms on the mortgage. Significantly, that modification, although binding on defendants, in no way released plaintiff from her mortgage obligations.

The plaintiff disputes defendants' version of what happened. She claims, in substance, that the loan and the conveyance were a single transaction, and that it was intended and understood by the parties that she was conveying the property as collateral for the $2,000 loan.

In deciding for plaintiff, the trial justice accepted her story, and specifically rejected the evidence favorable to defendants. In substance, he found it highly improbable that the parties could have contemplated that plaintiff would convey the home in which she had an equity of approximately $7,000 for the limited consideration testified

to by defendants, and it was his judgment that defendants "overreached and took advantage of plaintiff's poverty, inexperience and pressing financial conditions." These, in the main, were the circumstances which convinced the trial justice that plaintiff had satisfied her burden of establishing that the warranty deed which she executed and delivered, although absolute on its face, was intended as collateral for the $2,000 loan rather than as an unconditional conveyance of the fee.

Based substantially upon the foregoing findings, the defendants were directed to reconvey the real estate to plaintiff by a deed with quitclaim covenants, and plaintiff was ordered to execute and deliver to defendants a suitable mortgage of those premises as security for the loan. The legal doctrine upon which that kind of relief is predicated has long been established here as well as elsewhere. It permits the use of parol evidence in a court of equity to show that a conveyance of real estate, although absolute on its face, was intended as collateral for the payment of a debt and was in fact a mortgage. *Bevan* v. *Brooks,* (R. I.) 115 A. 923; *Nichols* v. *Reynolds,* 1 R. I. 30; 1 Glenn, *Mortgages* §11 at 53 (1943); 5 Tiffany, *Real Property* §1395 at 253 (3d. ed. 1939); 4 Williston, *Contracts* §635 at 1029 (Jaeger 3d. ed. 1961).

The defendants in no way dispute the legal doctrine invoked by the trial justice. What they in effect argue is that the trial justice improperly evaluated the evidence and that the doctrine does not for that reason apply. We cannot accept that argument. Basically, it rests upon the contention that defendants' witnesses and their version of what happened, rather than plaintiff's, should have been accepted as the more credible. That argument, while appropriate if addressed to a trier of facts, has no place in appellate proceedings. *Marstan Corp.* v. *Centreville Realty Co.,* 106 R. I. 36, 256 A.2d 26.

Additionally, defendants, as part of the same general contention, charge the trial justice with having misconceived the evidence. But the misconceptions to which they call our attention are on unimportant matters such as, for example, the trial justice's reference to plaintiff as a "widow," whereas, in fact, she was divorced from her husband; and his statement that the mortgage on plaintiff's house was not in default, whereas there was some evidence that it was one month in arrears.

In our judgment the trial justice neither overlooked nor misconceived material evidence on a controlling issue, and we therefore cannot agree with defendants that we should either disregard his factual determinations, or not accord them great weight. *Noonan* v. *Newport Ready Mix Concrete, Inc.*, 107 R. I. 646, 270 A.2d 83; *Coutanche* v. *Larivierre*, 107 R. I. 1, 264 A.2d 26; *Meader* v. *Cosper*, 106 R. I. 462, 260 A.2d 715; *Overton* v. *Washington National Insurance Co.*, 106 R. I. 387, 260 A.2d 444.

The defendants also claim that it was error for the trial justice to quash a subpoena *duces tecum* which had been issued at their request and which ordered the Department of Social Welfare to produce "the Public Assistance Application, supporting documents and Public Assistance Record of Dorothy M. Boudreau [plaintiff] * * *." Apparently, plaintiff had applied for public assistance several weeks after the conveyance of the real estate in question, and defendants asked for the subpoena in order to learn what, if anything, the department's records disclosed about the ownership of the real estate involved in this litigation.

In compliance with the subpoena the documents were produced, and when defendants sought to question a department official about those documents, counsel for the department, with the court's permission, intervened, and

argued that G. L. 1956 (1969 Reenactment) §40-9-15,[1] in substance and insofar as here relevant, provides that all records pertaining to public assistance are privileged and immune to judicial process except in matters directly connected with the administration of public assistance. The trial justice accepted that argument and quashed the subpoena.

In urging that it was error to protect plaintiff's public assistance records from disclosure, defendants, as we understand them, do not question the Legislature's power to give such records a privileged and confidential status. Instead, their position is that the statutory privilege goes no further than to forbid voluntary disclosure by public employees, and that the Legislature did not intend to prevent disclosure pursuant to the compulsion of a legal subpoena. This argument ignores the unequivocal statement in §40-9-15 which commences with the significant directive that "No subpoena shall be issued by a court." While defendants cite several cases[2] which appear to support their position, those cases construe statutes which, unlike the statute controlling in this case, do not expressly prohibit the use of the judicial process to compel the production of privileged records. In the absence of such a prohibition, those courts could properly say that the privilege was neither absolute

[1]Section 40-9-15 where pertinent reads: "All records pertaining to the administration of public assistance are hereby declared to constitute confidential matter. * * * Said records shall be produced in response to a duces tecum properly issued by any federal or state court; provided, however, that the purpose for which the subpoena is sought is directly. connected with the administration of public assistance. No subpoena shall be issued by a court asking either for said records, or for persons having custody or access to said records, unless the litigation involved in such matters is directly connected with the administration of public assistance."

[2]The authorities defendants rely on are: *Fears* v. *Burris Mfg. Co.,* 48 F.R.D. 91; *Bell* v. *Bankers Life & Casualty Co.,* 327 Ill. App. 321, 64 N.E.2d 204; *Marceau* v. *Orange Realty, Inc.,* 97 N. H. 497, 92 A.2d 656; *State ex rel. Haugland* v. *Smythe,* 25 Wash.2d 161, 169 P.2d 706.

nor intended to prevent the production of records and the disclosure of information pursuant to a judicial directive. This court took that view in *Powers ex rel. Department of Employment Security* v. *Superior Court*, 79 R. I. 63, 82 A.2d 885, where, in passing on statutes like those construed in the cases cited by defendants, it said at 70, 82 A.2d at 889:

> "In the absence of express prohibition of disclosure in the statutes herein cited it is our opinion that the court is not denied the power in a proper case to exercise its discretion and issue a subpoena *duces tecum.*"

In this case, however, the Legislature by appropriate and unambiguous language has expressly placed public assistance records, except in certain specified instances, beyond the reach of judicial discovery, and, at least in civil actions, we must accept that directive. Having failed to establish that they were entitled to production of the records under one of the statutory exceptions, defendants are without a legally sound basis to challenge the order quashing the subpoena.

The defendants argue in addition that it was error for the trial justice to permit testimony concerning a real estate transaction between them and a stranger to these proceedings. That argument lacks merit. The testimony, whose admission defendants now challenge, came into the case in response to a series of questions only one of which was objected to by defendants. They could, of course, have asked the trial justice to permit the interposition of a single objection to the line of questioning or to all of the testimony on the subject matter. Super. R. Civ. P. 46 specifically authorizes that procedure. Then, if that objection had been overruled, they would not have been required to repeat their objections as each question was asked, but would instead have been entitled to consider the remainder of the testimony as if proper objection had been

made and overruled when each question was posed. Here, however, they neither repeated their objection nor did they ask the trial justice to consent to a single objection taking the place of a series of objections. As a consequence all of the testimony they now claim was inadmssible came in without objection and its admission cannot serve as a valid ground of appeal. *DeSpirito* v. *Bristol County Water Co.,* 102 R. I. 50, 227 A.2d 782.

Finally, defendants claim that it was error for the judgment to provide that the promissory note of February 26, 1970, should be replaced by a new promissory note calling for the payment of $20 each month for a period of 100 months and further providing that the balance due should be accelerated if a monthly payment should be in default for a period of 90 days. These changes in the terms of the payment of the promissory note were not requested by plaintiff in her complaint, nor did she or defendants point either in their briefs or in their oral arguments to any evidence in the case which even remotely suggests that the terms of the original note were not conformable to the intentions of the parties. True, the original note may not be artistically drawn, but that alone in the circumstances does not call for the replacement of a note which, at least to the extent that we have been advised, accurately reflects the agreement of the parties.

Except to the extent indicated, the defendants' appeal is denied and dismissed; the judgment appealed from is affirmed; and the case is remitted to the Superior Court for further proceedings.

*Eugene J. Laferriere,* for plaintiff.

*Archambault & Archambault, Raoul Archambault, Jr.,* for defendants.