306 A.2d 802.

ROSE FOURNIER *et al. vs.* GEORGE P. WARD *et al.*

MAY 4, 1973.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. On August 26, 1965, the plaintiffs were passengers in an automobile which was involved in a collision with another automobile that was owned and operated by George P. Ward. The collision occurred in Foster just a few miles east of the Connecticut state line. In this declaratory judgment action the plaintiffs seek a determination as to whether or not Ward at the time of the mishap was insured with one of the companies that market Travelers Insurance. If he was not, then they ask that Allstate Insurance Company be liable to them under the uninsured motorist clause of the policy that covered the vehicle in which they were riding. A nonjury trial was held in the Superior Court. Judgment was entered which contained a finding that Ward was insured on August 26, 1965. Travelers has appealed.

It should be noted that plaintiffs have joined as defendants Travelers Insurance Company (Travelers Insurance) and Travelers Indemnity Company (Travelers Indemnity). Travelers Insurance did not write liability insurance in the state of Maryland in 1965. However, it did business in Virginia. Travelers Indemnity wrote liability insurance in

Maryland. Travelers' high risk business was written by a subsidiary called The Charter Oak Insurance Company (Charter Oak). Apparently, Charter Oak does business both in Maryland and Virginia.

In 1965, George P. Ward lived in Oxon Hill, Maryland. Near the end of June, 1965, he purchased a used car from an automobile dealer located in Annandale, Virginia. Maryland's law provided that no automobile could be registered unless the owner filed with the Registry of Motor Vehicles a certificate of liability insurance or deposited in its unsatisfied judgment fund the sum of $70. Ward stated that he had paid the car salesman $20 which was to cover the initial cost of the insurance. Sometime after the sale, the automobile agency sent Ward to the Marshall Insurance Agency, which is located in Alexandria, Virginia. It sells policies issued by Travelers Insurance and Travelers Indemnity. In his deposition which was read at trial, Ward testified that he went to the agency where he received a form distributed by the Maryland Department of Motor Vehicles known as UCJ-1A and that he gave the form, signed by himself and the insurance agent, to the salesman. A few days later, Ward received his Maryland registration certificate and license plates. There is no question that when he drove through Rhode Island in the late summer of 1965, his automobile bore Maryland registration plates "GA 6961."

Taylor M. Marshall testified in the Superior Court. The Marshall Insurance Agency is a partnership. However, he was the only partner who was licensed by Maryland to sell automobile insurance. The whole thrust of his testimony was an attempt to establish the fact that the registry form did not and could not emanate from his office.

Attempts to obtain a duly authenticated copy of the original notice of insurance which had been filed with the Department of Motor Vehicles proved fruitless. By the

time the need for a certified copy became apparent during the trial, it was learned that the department had destroyed its 1965 records. A xeroxed reproduction of a copy of the form which had been furnished by the state of Maryland to Ward's attorney is an exhibit.[1] It shows that on July 22, 1965 "Travelers Indemnity Company" had issued a binder for the required liability policy. The binder number is OOMV576300 and the insurance agency is identified as "Marshall Ins. Agency." Marshall said that this form contains so many irregularities that it is absolute proof that neither he nor any of his associates were responsible for the completion and filing of the disputed document.

The prefix "OOMV" Marshall said, is used by Travelers to indicate an automobile liability policy issued by Charter Oak in Virginia. Travelers' Maryland liability policies contain the prefix "MP." Charter Oak's Maryland policies have the prefix "OML." He also stressed that since only he could sell Maryland policies, a properly prepared form would have carried "Taylor M. Marshall" and not "Marshall Ins. Agency" as the agent. Travelers claims that when a comparison is made between the procedures taken in Marshall's office to insure a mistake-proof operation and the obvious flaws that appear in the registry form, it is obvious that no one connected with the Marshall Agency[2] prepared the form. Rather, they point the finger at the salesman who according to Travelers had a sale on his mind and chicanery in his heart because they blame the salesman for filling out the form. Their suspicions find no support in the record.

---

[1]See appendix.

[2]It is conceded that both the Marshall Insurance Agency and Taylor Marshall individually were authorized agents of Travelers. A properly authorized UCJ-1A form committed Travelers Indemnity or Charter Oak to issue the required policy.

In cross-examination Marshall admitted that in an earlier deposition he stated that his agency had contacts with personnel of the dealer who had sold the automobile to Ward. The insurance agent conceded that it was the practice to issue a binder in reliance on the dealer's promise to collect the premium and deliver it to his agency. The agent also acknowledged that it was possible that the registry form could have been issued by his staff with the wrong prefix appearing thereon. A crucial piece of evidence, however, is the copy of the UCJ-1A form filed in the Maryland registry. It bears the signature of Taylor Marshall. The trial justice, with the aid of a magnifying glass, found the signature to be legible and comparable to a sample of the agent's signature. The sample signature is found on an application for insurance by George Ward dated June 29, 1965. After extensive review of the evidence, the trial justice found as a fact that Marshall, or someone in his behalf, had delivered the form to Ward and that the signature appearing on the face of the certificate was made by Marshall.

It is true that the trial justice erred when in his ultimate decision he stated that Ward went personally to the Maryland registry with the UCJ-1A form. The record indicates that Ward gave the form to the automobile salesman who, in turn, effectuated the issuance of the registration and license plates. Travelers also points out that it is Travelers Indemnity not Travelers Insurance that issues liability insurance in Maryland. In his decision, the trial justice said that Travelers Insurance had issued the binder.

Both of these inadvertences are understandable. This suit was commenced in January, 1968. The hearing in the words of the trial justice was conducted on a "bits and pieces" schedule. Hearings were held on September 9, 1968; June 23 and 24, 1969; September 26, 1969; December 18, 1969; December 17 and 18, 1970; May 6 and May

27, 1971. Ward's deposition was read in June, 1969. Later on during the spasmodic travel of this suit, when Travelers in December, 1969 made a motion to dismiss the suit, the trial justice correctly stated that Ward had indeed delivered the form to the salesman. Of course, the final decision in the case was announced on May 27, 1971.

The trial justice's confusion with Travelers' various corporate ways of doing business is shared by others. In his deposition, Marshall insisted that the prefix "OOMV" was one used by Travelers in Virginia. When the agent testified in the Superior Court, he said he was in error and that "OOMV" was a designation for the Virginia business assigned by the underwriters to Charter Oak. A district manager for Travelers Insurance further compounded the confusion when in replying to a question posed by Allstate's counsel he said that there was no question but that "OOMV" is "a Travelers designation." Notwithstanding the confusion, it is clear that Travelers Insurance, Travelers Indemnity and Charter Oak are corporate ribs in Travelers well-publicized umbrella of protection.

Although Travelers' brief consists of 54 pages, it presses no evidentiary objections. Travelers recognizes that a trial justice's findings of fact in a jury-waived case will not be disturbed unless they are clearly wrong or are based on a misconception or an overlooking of material evidence on a controlling point. They insist that their appeal does not require the weighing of evidence. All they ask is that we correct an "obvious injustice." Travelers' arguments, when stripped of their verbiage, are unquestionably concerned with weighing the evidence and assessing the credibility of the witnesses. These are the functions of the trial court, not the appellate court. *Boudreau* v. *Holzer*, 109 R. I. 81, 280 A.2d 88 (1971); *Marstan Corp.* v. *Centreville Realty Co.*, 106 R. I. 36, 256 A.2d 26 (1969).

Armed with his magnifying glass, the trial justice found

no forgery and that the signature appearing on the form belonged to the agent. On the record before us, his findings of fact shall be affirmed. Furthermore, when an insurer has certified a motorist's financial responsibility to the Maryland Department of Motor Vehicles, it cannot be canceled until a minimum statutory notice of at least 30 days has been given. Maryland Code 1957 (1967 Replacement Volume), art. 66½, §142. Since the requisite notice was not given, Travelers Indemnity is bound to honor its commitment.[3]

The appeal of Travelers Insurance Company and Travelers Indemnity Company is denied and dismissed. The case is remitted to the Superior Court where the misnomer of the responsible insurer can be corrected pursuant to Super. R. Civ. P. 60(a).

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Gunning, LaFazia, Gnys & Selya, Bruce M. Selya, Richard T. Linn,* for plaintiffs.

*Keenan, Rice, Dolan & Reardon, Leonard A. Kiernan, Jr.,* for The Travelers Insurance Company, The Travelers Indemnity Company; *Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for Allstate Insurance Company, defendants.

---

[3]The commitment is to undertake the defense of Ward in negligence actions brought against him by the plaintiffs in 1967. These suits are pending in the Superior Court.

## Appendix*

**IMPORTANT**

**You must present this form with your tag application to the Motor Vehicles Commissioner or his Agent before you can secure your new auto license tags.**

TO THE COMMISSIONER, DEPARTMENT OF
MOTOR VEHICLES     GLEN BURNIE, MD.

UCJ-1A NOTICE OF INSURANCE

As provided by Secs. 150-177 incl., of Article 66½ A. C. of Md., 1957 ed., this is to certify that as of this date there has been issued a Policy, identified below, of Bodily Injury and Property Damage Liability Insurance in the amounts specified by Sec. 122 of Art. 66½ and that such Policy has not been terminated or cancelled.

The Travelers Indemnity Company

Name of Insurance Company licensed to do business in Maryland

| 1960 | Pontiac | 360L3377 |
|---|---|---|
| Model Year | Make | Serial (Identification) Number |

Policy or Binder No. 00MV576300 Eff. Date of Policy 7/22/65

Date Executed 7/22/65

**GA 6961**

Name George Ward

Street Addr. 5420 Oxon Hill Rd.

City, State Oxon Hill, Maryland

Name of Company or Agency Marshall Ins. Agency

By_____

Signature of Authorized Representative

THIS CERTIFICATE DOES NOT PROVIDE PROOF OF FUTURE FINANCIAL RESPONSIBILITY

NBCU 3558C ☞ REVERSE SIDE MUST BE SIGNED BY OWNER

[A75641]

*As a result of the numerous reproductions that have been made of the registry form, the reader, even if aided by a magnifying glass, will be unable to discern the agent's signature. The symbol "GA 6961" corresponds to Ward's license plate number.